UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                                )
                                                                )
UNITED STATES OF AMERICA                    )
                                                                )
                                                                )
  vs.                                                          )
                                                                )     **CRIMINAL NO.  1:17-CR-10066-IT**
                                                                )
JOSE CAMACHO a/k/a "TRAGA"                 )
                                                                )
_____   )

**DEFENDANT'S SENTENCING MEMORANDUM**

I.        **INTRODUCTION**

Now comes the defendant, Jose Camacho, in the above-referenced matter and respectfully offers the following sentencing memorandum to the Court in anticipation of the defendant's December 14, 2018 sentencing hearing before the Honorable Justice Indira Talwani, United States District Court Judge.

On March 12, 2018, the defendant appeared before the Court and pled guilty to Count One of the First Superseding Indictment, charging him with conspiring to distribute 500 grams or more of cocaine and 100 grams or more of heroin, in violation of Title 21, U.S.C. §846, 21 U.S.C §841 (b) (1) (B) (i) and  (ii). The U.S Attorney has filed an Information in this matter pursuant to 21 USC §851 and the defendant admits that he committed the crime charged in Count One of the First Superseding Indictment after one prior felony drug offense became final. As a consequence of the 21 USC §851 filing by the U.S Attorney, the defendant faces a mandatory minimum sentence of 120 months and a maximum sentence of life; supervised release for a term of at least eight years

and a maximum of life and a maximum fine of up to 8,000,000.00 with a mandatory special assessment of $100.

On or about March 12, 2018 the parties executed a plea agreement whereby the defendant waived certain appellate rights and agreed to a joint recommendation of 120 months incarcerated, a fine if imposed and eight years supervised release. The parties further stipulated that in accordance with USSG §2D1.1, defendant's base offense level is 30, because his conduct involved at least 3 kilograms of cocaine and at least 500 grams of heroin. The advisory United States Sentencing Guidelines ("USSG" or "Guidelines"), as calculated by probation in the Presentence Investigation Report ("PSR"), reflect a base offense level of 30, a total offense level of 27 and criminal history category of II, resulting in a guideline sentencing range ("GSR") of 78-97 months imprisonment. *PSR¶153-165*.  However, the statutorily required minimum sentence of 120 months is far in excess of the maximum guideline sentence by approximately 2 years. For this reason, the defendant suggest to the Court, that the mandatory 120 month sentence is sufficient to adequately punish the defendant for his conduct in this matter given the nature and circumstances of the offense as well as the history and characteristics of the defendant.

At this time, the defendant asks the Court to impose the mandatory minimum sentence of 120 months incarceration plus eight years of supervised release in the event he is not eligible for relief under §5K1.1 of the Guidelines.  Alternatively, in the event he does become eligible under §5K1.1 and, as a result, exempt from the statutory minimum sentence, defendant argues that a sentence less than 120 months based on 18 U.S.C §3553 principles is appropriate.

## II.    SENTENCING

In the aftermath of *United States v. Booker, 543 U.S. 220 (2005),* the Guidelines are advisory and the sentencing court may not mechanically assume that the GSR frames the boundaries of a

reasonable sentence in every case. See *Gall v. United States, 128 S. Ct. 586, 596-597 (2007).* Though the guidelines continue to serve as a "starting point" for analysis, courts are no longer bound by a "rigid mathematical formulation" and instead have wide discretion to impose non-guideline sentences. *Gall, 128 S. Ct. at 596.*

Once the court has calculated the GSR, the sentencing inquiry is "broad, open-ended, and significantly discretionary." *United States v. Martin, 520 F.3d 87, 91-92 (1st Cir. 2008) (citing United States v. Vega-Santiago, 519 F.3d 1, 4 (1st Cir. 2008).* The court must independently consider the statutory sentencing factors set out in 18 U.S.C. §3553 (a) and is free to arrive at a sentence outside the GSR so long as the sentence is reasonable and "sufficient, but not greater than necessary" to effectuate the goals of criminal punishment, as articulated in 18 U.S.C. §3553(a). *United States v. Jimenez- Beltre, 440 F.3d at 518-519 (1st Cir. 2006).*

Section 3553(a) of 18 U.S.C. § 3553 states that "the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Section 3553(a) (2) enumerates the following criteria:

> (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Under § 3553(a) the court in determining the particular sentence shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kind of sentence available; (4) the kinds of sentence and the sentencing range established for

the guidelines (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

When the Court is analyzing the § 3553(a) factors, the Court should not give any more or less weight to the sentencing guidelines than any other factor. *United States v. Jaber, 362 F.Supp. 2d 365 (D. Mass. 2005).* The sentencing judge may look at all sentencing facts, not just those made relevant by the guidelines when determining a sentence. For example, under § U.S.C.§ 3553(b), a judge may evaluate whether a departure from the guidelines was warranted taking into account any "aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." To make this decision, the Court had to take an independent look at the facts and circumstances of the particular case outside the parameters of the guidelines. The judge would employ "a perspective independent of the guidelines." See *United States v. Ribot, 97 F Supp. 2d 74, 75 n.2 (D. Mass. 1999).*

The defendant argues that a minimum mandatory sentence that is approximately 2 years greater than the maximum guideline range in this matter is more than sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a) (2). The defendant further suggests that there are no aggravating factors that would warrant a departure or variance resulting in a sentence in excess of ten years. A lengthy ten year sentence sufficiently punishes the defendant, satisfies the factors set forth in §3553(a) (2) and adequately accounts for the defendant's criminal history and arrest record.

a.   ***The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant***

The defendant was born in Bani, Dominican Republic and was raised by both parents and his maternal grandmother. There was domestic violence in the household with his father physically abusive towards him. After his parents separated, he grew apart from his father and did not have regular contact with him. His mother met a German citizen and moved to Germany without him which significantly impacted him at a young age. He was fourteen years old when he was left to his maternal grandmother to raise. Since the age of fourteen, Mr. Camacho had little or no contact with his parents. His grandmother struggled to support him, sometimes unable to properly feed him or clothe him. As a result of his abandonment and upbringing, the defendant feels this has led to inappropriate decision making during his life.

Mr. Camacho was educated in the Dominican Republic and left school in the ninth grade to seek employment to help support his family. He had a relationship with a woman in Bani, Dominican Republic and had three children with her. By the age of 26 he left his family and entered the United States illegally through Mexico seeking better employment opportunities to support his children. From 2006 through 2008 he lived in Revere, Massachusetts and, by 2009, was unfortunately involved in drug distribution. He was arrested and charged in federal court, served less than three years and was deported back to the Dominican Republic in 2012. Yearning to be with his new girlfriend and friends, he returned to the United States in 2013 and resided with his girlfriend and their two young children. He was employed as a landscaper until December, 2016 then at Gillette stadium as a cleaner until his arrest in this matter on February 14, 2017.

The offense to which Mr. Camacho pled guilty involved the distribution of approximately 3 kilograms of cocaine and 500 grams of heroin to a co-defendant in this matter. He was neither a leader nor supervisor of co-conspirators nor was he alleged to have used a firearm or any acts of

violence during this conspiracy[1]. The offense was committed after he served a three year sentence for similar conduct in 2009. The U.S Attorney has filed a 21 U.S.C §851 Information in this matter doubling the minimum mandatory sentence due to this prior conviction.

Despite Mr. Camacho's wrongdoings and limited employment qualifications, he is still capable of leading a productive and law-abiding life after serving a lengthy ten year sentence. He does have the ambition and ability to succeed without resorting to further criminal conduct. Mr. Camacho has learned that this conduct will only lead to lengthy imprisonment and separation from his family particularly his children. By pleading guilty in this matter Mr. Camacho took responsibility for his actions and is eager to resolve this case. He understands the lengthy sentence is traumatic for his children and he feels his absence is equivalent to the parental abandonment he felt as a child. He further understands that the minimum mandatory sentence proposed in this case is approximately 3 ½ times the sentence he received years ago for similar conduct. A consequence of having a prior criminal conviction for a prior felony drug offense. He has indicated to counsel, on numerous occasions, that he regretted his involvement in drug distribution which only resulted in prison time and separation from his family and nothing else. He has paid, and will continue to pay, a significant price for his conduct.

For these reasons, Mr. Camacho suggests to the Court that the agreed upon sentence of ten years imprisonment is significant under the circumstances and sufficient to adequately punish the defendant for his conduct.

---

[1] During the investigation, intercepts allegedly indicated that the defendant and a co-defendant discussed committing a robbery of a known drug dealer. No other details were provided during discovery and no additional intercepts were obtained to indicate that a robbery, in fact, was committed by the defendant.

> **b.**          *The Sentencing Rationales Set Forth In 18 U.S.C §3553*

The sentencing rationales set forth in 18 U.S.C. § 3553(a)(2) also do not compel a longer sentence in this case.

> **A.**     **Respect for the Law and Just Punishment**

A longer prison sentence is not necessary to reflect the seriousness of the offense, to promote respect for the law, or to provide just punishment. The total period of incarceration that Mr. Camacho faces for his course of conduct as well as his permanent ban from the United States is significant.  When that day arrives, he will likely be destitute, unemployed and separated from his family.  His life will be difficult when he is finally released.

In addition, Mr. Camacho will not be able to participate in raising his children nor will he be able to watch them grow to adulthood unless they, and their mother, leave the United States for life in the Dominican Republic or elsewhere. In all likelihood he will be incarcerated at a facility far from his family making visiting difficult.

For these reasons and others, the proposed punishment has far reaching effects and extends beyond the period of incarceration. The proposed sentence easily promotes respect for the law and just punishment.

> **B.**     **Deterrence**

For many of the same reasons, a longer prison sentence is not necessary to "afford adequate deterrence to criminal conduct" 18 U.S.C. §3553(a)(2)(B). The length of the proposed sentence taken in conjunction with deportation and separation from family members is a harsh penalty.  Any individual contemplating a similar course of conduct, even to satisfy a drug addiction or for any other reason, would certainly be deterred when faced with a lengthy sentence that is proposed in this matter.

###### C.        Protection from Further Crimes

A longer prison sentence also is not necessary to "protect the public from further crimes of the defendant" 18 U.S.C. §3553(a)(2)(C). Prior to the events at issue, Mr. Camacho did have a criminal record that consisted of a charge for which he has been convicted and sentenced. However, given the length of the proposed sentence and the punitive effect it will have on him, there is simply no reason to believe that he would engage in criminal activity in the future. The proposed sentence sufficiently considers the interests of the public and adequately protects it from further crimes of the defendant.

###### D.        Treatment and Training

Lastly, a longer prison term is not necessary "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" 18 U.S.C. §3553(a)(2)(D).  Although not drug dependent, the sentence proposed allows sufficient time for Mr. Camacho to address any mental health issues and sufficient time to seek vocational training in anticipation of applying that training once released.

### III.    CONCLUSION

Mr. Camacho committed a serious offense. The proposed sentence taken in conjunction with mandatory deportation, is "sufficient, but not greater than necessary" to adequately address the offense committed by Mr. Camacho. Taken together, the history of the defendant, the nature and circumstances of the offenses, and the sentencing factors described in 18 U.S.C. §3553 all support the proposed sentence. The defense thus respectfully urges the Court to impose the sentence recommended by the defendant and the U.S Attorney or, alternatively, in the event he does become eligible under §5K1.1 to a sentence below the statutory minimum sentence.

Respectfully Submitted
Defendant, Jose Camacho
By His Attorney,


 */s/ Philip J. Doherty*
Philip J. Doherty
c/o Doherty Law Offices
73A Winthrop Ave.,
Lawrence, Massachusetts
978-687-7700
pdohertylaw@verizon.net
BBO # 554591


Dated:    December 7, 2018